# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 13, 2022

Lyle W. Cayce
Clerk

No. 21-50609

Noble Capital Fund Management, L.L.C.; TXPLCFQ, L.L.C.; TXPLCFNQ, L.L.C.,

*Plaintiffs—Appellees*,

*versus*

US Capital Global Investment Management, L.L.C., *formerly known as* US Capital Investment Management, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-1247

Before Richman, *Chief Judge*, and Higginbotham and Elrod, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

This case arises from a dispute regarding a joint financial venture between Noble Capital Fund Management, L.L.C. and US Capital Global Investment Management, L.L.C. Following the termination of the arbitration proceedings, Noble sought to resolve its claims in court. The district court denied US Capital's motion to stay judicial proceedings and compel arbitration.US Capital now appeals that decision. We affirm.

No. 21-50609

## I.

In 2016, Noble and US Capital conducted preliminary discussions regarding a joint real estate investment venture. In 2017, Noble created two separate funds—TXPLCFQ, L.L.C. and TXPLCFNQ, L.L.C. (collectively the "Feeder Funds")—to provide an initial contribution to the joint venture. Noble's investors placed $25 million into the Feeder Funds. The Feeder Funds and US Capital entered into the Limited Partnership Agreement to establish the US Capital/Noble Capital Texas Real Estate Income Fund, LP (the "Fund"). Under the LPA, US Capital was the Fund's general partner. Noble, US Capital, and the Fund then entered into the Management Advisory Services Agreement, whereby Noble was in charge of making investments for the Fund. Both agreements had enforceable arbitration clauses.[1]

The relationship between the parties quickly soured. On January 15, 2019, Noble and the Feeder Funds initiated a JAMS arbitration against US Capital, alleging that US Capital engaged in fraud, mismanaged and converted the Fund's assets, attempted to usurp Noble's client network, and breached its contractual and fiduciary duties. While the arbitration was proceeding, the Fund sued Noble in the Northern District of California;[2] this suit was stayed and consolidated with the JAMS proceeding.

On July 10, 2019, a JAMS arbitrator entered an Emergency Arbitrator's Award, in part enjoining US Capital from causing the Fund to use Fund money for its lawsuit or the outside investigation it was conducting

---

[1] *See Noble Cap. Grp., L.L.C. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481 (5th Cir. Aug. 6, 2021).

[2] *See US Cap./Noble Cap. Tex. Real Est. Income Fund, LP v. Newman*, 3:19-cv-2750 (N.D. Cal. May 20, 2019).

into Noble. The Fund then filed a motion to clarify or modify the emergency arbitrator's partial award. On September 19 and 20, 2019, a JAMS panel conducted a hearing on the Fund's motion. In its Partial Final Award, the JAMS panel placed an immediate freeze on the Fund's remaining assets absent a further order.

A final JAMS hearing on the merits was set for January 2021. However, on August 11, 2020, the Fund claimed it could not pay its portion of the JAMS expenses due to the freeze imposed by the Partial Final Award and required an order directing Noble to pay the Fund's portion of the expenses. The Fund claimed that if Noble was not ordered to pay the Fund's cost, the arbitration of the Fund's claims against Noble must be terminated so that the Fund could resume its litigation in federal court. Neither Noble nor US Capital paid the Fund's expenses in order to sustain the arbitration. The JAMS panel terminated the arbitration, and the arbitration was officially closed as of October 26, 2020.

On November 24, 2020, Noble and the Feeder Funds sued US Capital in Texas state court, asserting claims for fraud and fraudulent inducement, breach of fiduciary duty, breach of contract, and tortious interference. The case was removed to federal court. US Capital moved to compel arbitration and stay proceedings, or dismiss the action, or transfer venue to the Northern District of California. After referring US Capital's motions to a magistrate judge, the district court adopted the magistrate judge's Report and Recommendation in full and denied each of US Capital's motions. US Capital appeals the denial of its motion to compel arbitration and stay judicial proceedings and the denial of its motion to transfer.

## II.

We have jurisdiction over an appeal of the district court's denial of a motion to compel arbitration and stay judicial proceedings pursuant to 9

No. 21-50609

U.S.C. § 16(a)(1)(A) and 28 U.S.C. § 1332(a) as there is complete diversity between the parties.[3] "We review *de novo* a district court's denial of a motion to compel arbitration and to stay judicial proceedings pursuant to the [Federal Arbitration Act]."[4]

Section 3 of the Federal Arbitration Act requires that, where a suit is referable to arbitration, judicial proceedings be stayed until arbitration has been had in accordance with the terms of the arbitration agreement.[5] Before us today is whether arbitration has been had and the parties may now pursue their claims in court.

Here the parties' arbitration agreements called for arbitration pursuant to JAMS Comprehensive Arbitration Rules and Procedures, which included the right of JAMS to terminate the arbitration proceedings for nonpayment of fees by any party.[6] Exercising this right, JAMS terminated the arbitration proceeding following the Fund's nonpayment. Following the lead of our sister circuits, we conclude that arbitration 'has been had.'[7] Even though the arbitration did not reach the final merits and was instead

---

[3] *See Badgerow v. Walters*, No. 20-1143, --- S. Ct. --- (U.S. Mar. 31, 2022).

[4] *Galey v. World Mktg. All.*, 510 F.3d 529, 531 (5th Cir. 2007).

[5] 9 U.S.C. § 3.

[6] *See* JAMS Rule 6(c) ("If, at any time, any Party has failed to pay fees or expenses in full, JAMS may order the suspension or termination of the proceedings.").

[7] *See Tillman v. Tillman*, 825 F.3d 1069, 1072–74 (9th Cir. 2016) (holding that arbitration had been had where arbitration was terminated after the plaintiff was unable to pay her portion of the arbitration fees); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1293–94 (10th Cir. 2015) (affirming the lift of a stay of judicial proceedings after a party failed to pay arbitration fees and the arbitration proceedings were terminated by the arbitrator); *and Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 934–35 (11th Cir. 2019) (affirming the lift of a stay of judicial proceedings after the party seeking to enforce the arbitration agreement failed to pay its JAMS filing fees and JAMS terminated the arbitration).

terminated because of a party's failure to pay its JAMS fees, the parties still exercised their contractual right to arbitrate prior to judicial resolution in accordance with the terms of their agreements.

US Capital argues that the circumstances of the arbitration's termination, here for non-payment by a party, should control. But the statute does not ask why the arbitration terminated and thus the inquiry over whether arbitration "has been had" does not require us to examine the cause of the arbitration's termination, only that arbitration has been had in accordance with the terms of the agreement. There is no arbitration to return this case to and parties may not avoid resolution of live claims through compelling a new arbitration proceeding after having let the first arbitration proceeding fail. Therefore, the district court properly denied US Capital's motion to stay judicial proceedings and compel arbitration.

## III.

US Capital alternatively appeals the denial of its motion to transfer. However, prior to addressing the merits of the motion to transfer, we must satisfy ourselves that appellate jurisdiction is proper.[8] As no statute specifically grants appellate jurisdiction and the district court has not certified its denial of the motion to transfer for appeal under 28 U.S.C. § 1292(b), we only have jurisdiction if we can exercise pendent appellate jurisdiction over the denial of the motion to transfer.

"Pendant appellate jurisdiction is only proper in rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is

---

[8] *Thornton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998) (per curiam).

No. 21-50609

necessary to ensure meaningful review of the appealable order."[9] The factors considered in reviewing a denial of a motion to transfer venue are entirely distinct from the factors considered in reviewing a denial of a motion to stay judicial proceedings and compel arbitration.[10] Because we need not consider the motion to transfer venue in order to address the motion to compel arbitration and stay proceedings, the two issues are not inextricably intertwined. And these issues are not so related as to where resolving them together would promote judicial economy.[11] We find no pendent jurisdiction over the denial of the motion to transfer and decline to consider this issue further.

## IV.

For the foregoing reasons we AFFIRM the district court's denial of the motion to stay judicial proceedings and compel arbitration and we DISMISS the appeal of the district court's denial of the motion to transfer for a lack of jurisdiction.

---

[9] *Id.*

[10] *See Lavigne v. Herbalife, Ltd.*, 967 F.3d 1110, 1120–21 (11th Cir. 2020) (affirming a district court's denial of a motion to compel arbitration and finding that Eleventh Circuit did not have pendent jurisdiction to consider the accompanying denial of a motion to transfer venue).

[11] *See Thornton*, 136 F.3d at 453.